UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Lewis Abdul Kalim Sibomana,<br><br>    Petitioner<br><br>v.<br><br>Christopher Chestnut, Nevada Southern Detention Center Warden, et al.,<br><br>    Respondent | Case No.: 2:23-cv-00120-JAD-VCF<br><br>**Order Denying Petition for a Writ of Habeas Corpus**<br><br>[ECF Nos. 7, 20] |

Petitioner Lewis Abdul Kalim Sibomana is a federal prisoner at the Nevada Southern Detention Center ("NSDC") who alleges that he has been detained by U.S. Immigration and Customs Enforcement ("ICE"), without a bond hearing, since September 15, 2021. He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his continued confinement without an individualized determination as to his risk of flight and dangerousness violates the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment.[1] He asks to be either released from custody or granted a bond hearing.[2] Having considered the exhibits and arguments filed by both parties, I deny Sibomana's petition for a writ of habeas corpus.

---

[1] ECF No. 7.

[2] *Id*. at 7.

## I. Background

Sibomana, a native and citizen of Rwanda, came to the United States in September 2011 on a nonimmigrant student visa.[3] In February 2012, he applied for asylum but was denied it.[4] In September 2015, the government initiated removal proceedings.[5] When an immigration judge ("IJ") found him to be removable, Sibomana, through counsel, informed the IJ that he would be renewing his request for asylum.[6]

In February 2020, Sibomana was arrested in Los Angeles and charged with multiple sex offenses.[7] In April 2021, he was convicted of sodomy of an unconscious or asleep victim.[8] The victim was 16 years old at the time of the offense.[9]

Sibomana was released from state custody on August 8, 2021.[10] He was detained by ICE on September 15, 2021, and placed at the Otay Mesa Detention Center ("OMDC"), in California.[11] Sibomana is currently detained under 8 U.S.C. § 1226(c), which calls for mandatory detention for aliens who have been convicted of certain crimes, including an "aggravated felony."[12] In March 2022, an IJ in the San Diego Immigration Court denied Sibomana's "applications for asylum, withholding of removal, and any and all benefits under the

---

[3] ECF No. 10-2 at 2, 8.
[4] *Id*. at 9.
[5] *Id*.
[6] *Id*. at 10.
[7] *Id*. at 42, 60–62.
[8] *Id*. at 12.
[9] *Id*. at 15.
[10] ECF No. 7 at 2.
[11] *Id*.
[12] *Id*.

United Nations Torture Convention" and ordered that he be removed from the United States.[13] Sibomana appealed that determination to the Board of Immigration Appeals ("BIA").[14]

In June 2022, an IJ in the Otay Mesa Immigration Court denied Sibomana's request for a custody redetermination, citing lack of jurisdiction to conduct a bond hearing for those detained under § 1226(c).[15]  In August 2022, the BIA dismissed Sibomana's appeal of the March 2022 IJ decision[16] but vacated the dismissal two months later because Sibomana's attorney, who had been allowed to withdraw from representation, had filed a motion to extend the briefing schedule that had not been ruled upon prior to the dismissal.[17]

On November 7, 2022, Sibomana was transferred from OMDC to NSDC.[18]  Shortly thereafter, he filed another request for a bond hearing in the Las Vegas Immigration Court.[19] The IJ conducted a hearing and, in December 2022, issued a decision denying a bond redetermination.[20]  Like the IJ in the Otay Mesa Immigration Court, the IJ in the Las Vegas Immigration Court concluded that the court lacked jurisdiction to set a bond for those detained under § 1226(c).[21]  However, the IJ also concluded that, in the alternative, Sibomana had not met his burden of proving that he is not a danger to the community.[22]

---

[13] ECF No. 10-2 at 8–25.
[14] ECF No. 17-3 at 3.
[15] ECF No. 10-2 at 66.
[16] ECF No. 17-4.
[17] ECF No. 17-5.
[18] ECF No. 10-4 at 3.
[19] ECF No. 19 at 4.
[20] ECF No. 17-7.
[21] *Id*. at 3.
[22] *Id*.

Sibomana initiated this federal habeas proceeding in late January 2023 and sought a temporary restraining order.[23] About a month later, his new counsel in his immigration proceedings filed a brief with the BIA in support of his reinstated appeal of the IJ's March 2022 denial of his applications for withholding of removal and relief under Convention Against Torture.[24] The BIA's decision regarding that appeal remains pending. On March 3, 2023, I denied Sibomana's request for preliminary relief but ordered the government to respond to his habeas petition, which is now fully briefed.[25] On March 21, 2023, the BIA affirmed without opinion the Las Vegas Immigration Court's decision to deny Sibomana's request for a bond redetermination.[26]

## II. Legal Standards

Title 28 U.S.C. § 2241 grants federal courts the authority to issue writs of habeas corpus to individuals in custody if that custody is a "violation of the Constitution or laws or treaties of the United States."[27] Section 2241 is the proper vehicle through which to challenge the constitutionality of an alien's detention without bail.[28]

The U.S. Supreme Court in *Jennings v. Rodriguez* held "that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."[29] The

---

[23] ECF Nos. 1–6.

[24] ECF No. 18 at 25, 34–85.

[25] ECF No. 16; ECF Nos. 17, 18.

[26] ECF No. 18 at 24.

[27] 28 U.S.C. § 2241(c)(3).

[28] *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

[29] *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018).

4

High Court overturned Ninth Circuit precedent requiring periodic bond hearings for § 1226(c) detainees as a statutory matter, but declined to reach the merits of the petitioners' constitutional arguments.[30]  As a result, current Supreme Court precedent does not tell us when the length of detention under § 1226(c) will become unreasonable without a hearing, making continued detention unconstitutional in a particular case.  The issue also remains unresolved in the Ninth Circuit.[31]

In *Mathews v. Eldridge*, the Supreme Court said the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner"[32] and laid out a three-part test to determine whether a claimant has been provided constitutionally adequate due process.[33]  Recognizing that "due process is flexible and calls for such procedural protections as the particular situation demands," the court must consider: (1) the private interest affected by government action; (2) the risk of an erroneous deprivation of the private interest through the procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the government's interest, including the function involved and the burdens

---

[30] *Jennings*, 138 S. Ct. at 851.

[31] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022) ("We in turn remanded [*Jennings*] to the district court, which has not yet issued a decision."); *see also Avilez v. Garland*, 48 F.4th 915, 927 (9th Cir. 2022) (declining to make a determination on whether due process required a bond hearing for a noncitizen detained under § 1226(c) and remanding to the district court for consideration of the due-process claim).

[32] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).

[33] *Id*. at 334–35.

5

that additional or alternative procedures would entail.[34]  In a variety of contexts, the Ninth Circuit has applied *Mathews* to due-process challenges to immigration detention.[35]

### III. Alleged Due-Process Violation

When I ruled on Sibomana's motion for a temporary restraining order, I suggested that Sibomana's 18-month detention without a bond hearing may be unreasonable as a matter of constitutional due process.  The Supreme Court in *Demore v. Kim* upheld the constitutionality of mandatory detention under § 1226(c) but took care to note that such detention is for only a "very limited" and "brief" period of time.[36]  In light of its several references to the brevity of detention under § 1226(c), the Court was contemplating periods of detention far shorter than the one Sibomana has endured.[37]

The government argues that, without guidance from a higher court, this court should refrain from deciding whether the length of Sibomana's detention under § 1226(c) gives rise to a constitutional challenge.  Under that reasoning, a § 1226(c) detainee held for an unreasonable length of time without a bond hearing currently has no remedy in the federal district court regardless of his or her circumstances.  Also, the authority the government cites to support its

---

[34] *Id*. (internal quotation marks and citation omitted).

[35] *See id*. at 1206 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").

[36] *Demore v. Kim*, 538 U.S. 510, 513, 529 n.12 (2003).

[37] *Id*. at 526 (describing the Court's "longstanding view that the Government may constitutionally detain deportable aliens during the *limited period* necessary for their removal proceedings" (emphasis added)); *id*. at 529 (explaining that most detentions under § 1226(c) last for "less than the 90 days we considered presumptively valid in *Zadvydas*"); *id*. at 530 (emphasizing that § 1226(c) detention "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal").

position is not persuasive.[38]  The Ninth Circuit recently recognized, without condemnation, that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)."[39]

Most of the more recent of those district court decisions support a finding that Sibomana's detention, now exceeding 18 months, is presumptively unreasonable.[40]  However, the government argues that, contrary to Sibomana's claim that he has not been provided a bond determination, he has actually received two of them while in ICE custody.  The government cites the June 2022 decision issued by the IJ in the Otay Mesa Immigration Court and the December 2022 decision issued by the IJ in the Las Vegas Immigration Court.

The June 2022 decision was a summary denial based on a finding that the immigration court lacked jurisdiction to make a custody redetermination because Sibomana is detained under § 1226(c).[41]  Because she did not consider whether Sibomana posed a danger to the community or was flight risk, the IJ did not provide Sibomana with an opportunity to be heard in a meaningful manner, which is a fundamental requirement of due process.[42]

The IJ who issued December 2022 decision also ruled that the immigration court lacked jurisdiction to set a bond for Sibomana but nonetheless applied the substantive test for an

---

[38] The government relies on *Jennings* and *Demore*, neither of which forecloses as-applied constitutional challenges to detention under § 1226(c).  Indeed, the Supreme Court has expressly recognized the viability of such challenges.  *See Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

[39] *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022).

[40] *See Doe v. Garland*, 2023 WL 1934509 (N.D. Cal. Jan. 10, 2023); *Sanchez-Rivera v. Matuszewski*, 2023 WL 139801 (S.D. Cal. Jan. 9, 2023); *Lopez v. Garland*, 2022 WL 4586413 (E.D. Cal. Sept. 29, 2022).

[41] ECF No. 10-2 at 66.

[42] *See Mathews*, 424 U.S. at 333.

7

immigration bond determination—i.e., whether Sibomana could show that he does not pose danger to the community and is not a flight risk.[43] In finding that Sibomana is a danger to the community, the IJ cited a "Pre-Conviction Report" indicating that Sibomana had, on multiple occasions, sought out young male victims and plied them with alcohol before sexually abusing them while they were unconscious.[44] The IJ recounted three separate instances of Sibomana engaging in this conduct.[45] The IJ also determined that the fact that Sibomana "may have ties to the community" or that "he ha[d] not previously been arrested or convicted of a crime" did not outweigh "the seriousness and repeated nature of his conduct."[46] The question then is whether this second bond proceeding provided Sibomana with constitutionally adequate due process under *Mathews*.

The first *Mathews* factor is met because Sibomana's private interest in being free from prolonged detention is clearly substantial.[47] However, the IJ's March 2022 decision denying immigration relief and ordering Sibomana's removal was issued when Sibomana had been detained for about six months. His private interest is diminished, to some extent, by the fact that most of the period of his detention arises from the fact that he chose to challenge his removal order.[48]

---

[43] ECF No. 17-7 at 3 (citing *Matter of Guerra*, 24 I&N Dec. 37, 40; 8 C.F.R. § 1236.1(c)(3)).
[44] *Id*. at 3.
[45] *Id*.
[46] *Id*.
[47] *See Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) ("The private interest here—freedom from prolonged detention—is unquestionably substantial."). *See also Aleman Gonzalez v. Barr*, 955 F.3d 762, 772 (9th Cir. 2020); *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011).
[48] *See Rodriguez Diaz*, 53 F.4th at 1207–08.

Sibomana relies heavily on an allegation that he is not receiving necessary treatment for his injured leg. In denying his motion for a temporary restraining order, I found that he had not convincingly refuted evidence that the government was adequately addressing that injury.[49] Sibomana continues to dispute this, but a civil-rights action, not a habeas corpus proceeding, is the proper mechanism for a prisoner seeking to challenge the conditions of his confinement.[50]

Skipping to the third *Mathews* factor, the Supreme Court has held that, when the *Mathews* test is applied, "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature."[51] In addition, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal aliens.'"[52] Sibomana's conviction for sodomy of an unconscious or asleep victim, which involved a minor, is relatively recent. In addition, the IJ noted that the conduct underlying the conviction was not an isolated incident, but instead one of at least three similar incidents. Sibomana does not address this issue in any meaningful way or offer any probative evidence that he is not likely to commit similar acts if released on bond.[53] Thus, the record supports a finding that the government has a strong interest in Sibomana's continued

---

[49] ECF No. 16 at 6–8.

[50] *Muhammed v. Close*, 540 U.S. 749, 750 (2004) (per curiam); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[51] *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

[52] *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 515).

[53] *See Zadvydas v. Davis*, 533 U.S. 678, 721 (2001) (Justice Kennedy noting, in his dissent, that due process for immigration detainees requires "adequate procedures to review their cases, allowing persons once subject to detention to show that through rehabilitation, new appreciation of their responsibilities, or under other standards, they no longer present special risks or danger if put at large").

1  detention.  I also find that it would be unduly burdensome to require the government to conduct

2  another bond hearing so soon after conducting the last one.

3        The remaining *Mathews* factor is "the risk of an erroneous deprivation of the private

4  interest through the procedures used, and the probable value, if any, of additional or alternative

5  procedures."[54]  Sibomana has filed with this court the evidence he submitted to the immigration

6  court in support of both of his requests for a bond hearing.[55]  As noted, the first request was

7  summarily dismissed for lack of jurisdiction, so it is safe to say that the IJ did not consider the

8  evidence in that proceeding.  While the IJ's decision in the second proceeding cites exclusively

9  to the government's exhibits, Sibomana makes no claim that the IJ did not consider his evidence

10 or testimony.  In fact, he fails or refuses to even acknowledge that the IJ in the second

11 proceeding made an alternative finding that he is a danger to the community.

12       The evidence Sibomana submitted to the IJ provides an overview of his life in the United

13 States from the time he arrived in September 2011.  Among other things, it shows that he lived,

14 worked, and attended college in Maine and North Dakota prior to moving to Los Angeles, where

15 he worked as a car salesman for nearly three years before his arrest.  It also shows that he has a

16 six year-old son for whom he is required to pay child support.

17       As for the risk that the IJ erred in denying bond, the evidence Sibomana submitted to

18 immigration court does little to show that he does not pose a danger to the community.  Much of

19 that evidence relates to injuries Sibomana sustained as the result of an assault in jail in January

20 2021, which included a right fibula fracture that was repaired with a metal plate, and a nasal

---

[54] *Mathews*, 424 U.S. at 335.

[55] ECF No. 19.

bone fracture.[56] This evidence does not speak to whether Sibomana poses a danger to the community. Similarly, Sibomana's submission also included a copy of a motion to vacate his conviction filed in California state court, but the arguments supporting that motion do not suggest that Sibomana is not guilty of the charge to which he pled guilty.[57] Instead, the motion is grounded on an allegations that Sibomana's counsel failed to advise him of the immigration consequences of his guilty plea. Sibomana also provided the immigration court with letters of support from a couple of friends and a former employer.[58] Those letters attest to some of Sibomana's positive attributes but provide meager assurance that Sibomana will not reoffend if released. Notably absent from Sibomana's submission to the IJ is any significant evidence addressing his criminal conduct or demonstrating that he no longer poses a danger to the community.

Thus, based on my review of the evidence, "the risk of an erroneous deprivation of the private interest through the procedures used" is not significant. Because the BIA dismissed of Sibomana's appeal without opinion, I do not know whether it considered the IJ's alternative dangerousness finding or merely concluded that it lacked jurisdiction under § 1226(c). So, a written opinion by the BIA would have added some value to the due process determination, but not enough to significantly tip the *Mathews* scale in Sibomana's favor.

Finally, Sibomana complains that he was deprived of a meaningful opportunity to appeal the IJ's decision denying bond to the BIA because he was unable to review a transcript or recording of the immigration court hearing. To the extent this may have violated his right to due

---

[56] *Id*. at 52–57, 59–64, 140–57.
[57] *Id*. at 122–34.
[58] ECF No. 19 at 36, 38–39.

11

process, he would still need to demonstrate prejudice.[59] Sibomana does not offer any reason why a transcript or recording of the hearing would have increased his chances of prevailing on appeal.

Weighing the three *Mathews* factors in light of the current record, I conclude that Sibomana has received all of the due-process protections to which he is entitled at this time. For that reason, I deny his claim that he is entitled to habeas relief under the Due Process Clause.

### IV.     Alleged Eighth Amendment Violation

Sibomana also asserts that his prolonged detention violates the Eighth Amendment's Excessive Bail Clause. The removal process is a civil proceeding and not a criminal punishment.[60] In addition, "when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, . . . the Eighth Amendment does not require release on bail."[61] With respect to § 1226(c), Congress mandated the detention of noncitizens who have committed certain crimes to prevent them from "absconding or *engaging in criminal activity* before a final decision can be made" in their removal proceedings.[62] Because § 1226(c) mandates detention for reasons other than prevention of flight, Sibomana's detention does not violate the Excessive Bail Clause.[63]

---

[59] *See Singh*, 638 F.3d at 1209 ("Singh has not shown that a recording or transcript would reveal any error that is not sufficiently apparent from the IJ's memorandum decision.").

[60] *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1039 (1984); *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002).

[61] *United States v. Salerno*, 481 U.S. 739, 752 (1987).

[62] *Jennings*, 138 S. Ct. at 836 (emphasis added); *see also Demore*, 538 U.S. at 518, 527–28 (explaining that mandatory detention under § 1226(c) serves the purposes of preventing both flight and additional criminal activity by the noncitizens who fall within its scope).

[63] *See Salerno*, 481 U.S. at 752.

**V.     Conclusion**

**IT IS THEREFORE ORDERED** that Sibomana's petition for a writ of habeas corpus **[ECF No. 7] is DENIED**.  The Clerk of Court is directed to enter judgment accordingly and close this case.  The motion to expedite this petition **[ECF No. 20] is DENIED** as moot.

Dated: May 26, 2023

_____
U.S. District Judge Jennifer A. Dorsey